IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| EUN O. KIM, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:09-CV-01572-AW |
| DOUGLAS A. NYCE, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Parcel K-Tudor Hall Farm, LLC's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 61). The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant Motion. The issues have been fully briefed and no hearing is deemed necessary. *See* D. MD. LOC. R. 105.6 ( 2010). For the reasons stated more fully below, the Court **DENIES** Defendant's Motion.

I.   **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the Complaint and construed in the light most favorable to the Plaintiff. The case is brought by several Plaintiffs who invested in a real estate business, Sunchase Capital Partners XI, LLC, ("Sunchase"). Defendant Nyce & Co., Inc., owned by Defendant Douglas A. Nyce ("Nyce"), was the class B Member of Sunchase and had sole authority to appoint, remove, and replace the manager of Sunchase. Defendant Nyce was at all relevant times the manager of Sunchase with sole authority to make all decisions with respect

1

to its management and operations. Sunchase has not been named as a defendant; however, suit has been brought against Defendant Parcel K-Tudor Hall Farm, LLC, ("PK-THF") a company created in the real estate transaction that underlies the dispute.

Sunchase signed an agreement of sale dated April 6, 2004 agreeing to purchase property ("the Property") from Tudor Hall Farm, Inc.("the Seller") for $15,000,000. The sale agreement provided Sunchase with title to 141 acres of unimproved real property, save a 7.88 acre area ("Parcel K"), to be titled in the name of PK-THF. PK-THF's initial membership consisted of Sunchase, with an 80% stake, and the Seller, with a 20% stake.

In order to raise the $15,000,000, Sunchase created an offer and sale to investors of securities described as Class A Membership Units in Sunchase. The proposed investment is described in a Confidential Summary of Offering, dated April 13, 2005. One hundred shares were offered at a cost of $150,000 each for $15,000,000 total. Each investor was supposed to complete an Investor Questionnaire, sign a Subscription Agreement, and sign the Operating Agreement of Sunchase. None of the Plaintiffs in this matter were provided with or asked to complete an Investor Questionnaire. Plaintiffs purchased subscriptions for Class A Membership Units during the period from approximately May 1, 2005 through July 31, 2005. The Operating Agreement expressly required Defendant Nyce, as Manager of Sunchase, "to act at all times in a fiduciary manner toward the Company and the Members." (Doc. No. 1-3 (Ex. C)).

The Confidential Summary represents that Class A subscription payments would be held in escrow pending acquisition of the Property at closing under the sale agreement. The Confidential Summary defines the "Minimum Offering" as 50 Class A Membership Units, or $7,500,000. The Subscription Agreement states, "if subscription [sic] for at least 50 Units are not received and accepted by the Company on or prior to April 29, 2005, the offering shall

terminate and each Investor's $150,000 per Unit subscription payment shall be returned, without interest." (Doc. No. 1-2 (Ex. B)). The Confidential Summary further represented that Sunchase would not acquire the Property if less than the Maximum Offering ($15,000,000) was raised and "Sunchase was not able to obtain additional funds, whether from the Class B Member or otherwise." (Doc. No. 1-1 (Ex. A)).

Sunchase closed on the acquisition of the Property on May 2, 2005. At that point in time Defendants had raised $3,125,000 through the sale of Class A Membership Units. Sunchase, at that point, had been unable to obtain a commitment from any investor or lender to provide the remaining $11,875,000. During a period of approximately three months after the closing on the acquisition of the Property, Sunchase sold $3,972,000 in Class A Membership subscriptions bringing the total to $7,097,000: $403,000 short of the Minimum Offering and $7,903,000 short of the Maximum Offering. Sunchase had also failed to acquire an investor or lender to make up the $7,903,000 difference.

Sunchase then negotiated a modification of its sale agreement with Tudor Hall Farms, Inc. to acquire the property. The modification allowed Sunchase to pay the Seller over time for an increase in the sale price of $500,000 to $15,500,000. Using funds from the Class A Membership offering, Sunchase paid $3,000,000 to the Seller at closing on May 2, 2005 and agreed to pay the balance according to the terms of a confessed judgment seven-percent Purchase Money Note which matured on May 2, 2006. Among other things, the Purchase Money Note required Sunchase to make monthly interest payments until maturity, and principal payments on the Note, as follows: $2,000,000 on July 2, 2005; $5,250,000 on November 16, 2005; and $5,250,000 (less $750,000) on May 2, 2006. The Purchase Money Note was secured by a first deed of trust on the Property.

3

Sunchase found itself unable to pay on the Purchase Money Note. Consequently, Nyce solicited a business associate, William D. Pleasants, to make a $5,250,000 investment in Sunchase. In an email to Pleasants, Nyce explained that Sunchase needed the investment to meet the November 16, 2005 payment on the Purchase Money Note. One week before payment was due, Nyce emailed Pleasants again with a more desperate tone. Pleasants, acting through the 2003 Trust of the Descendants of William D. Pleasants, Jr. (the "Pleasants Trust"), agreed to make a $5.315 million investment (roughly 34% of the $15 million total) in Sunchase in exchange for a 42% ownership interest in Class A. Defendants Nyce and Nyce and Co., Inc. agreed to preferential investment terms for the Pleasants Trust including additional cash flow distributions, accelerated payment of cash flow distributions, and a pledge of collateral to secure these obligations.

To manage the investment, the Pleasants Trust created Tudor Hall Funding, Inc., which was owned 95% by the Pleasants Trust. On April 27, 2006, prior to the final maturity date of the Purchase Money Note, Tudor Hall Funding agreed to purchase the Purchase Money Note from Tudor Hall Farm, Inc. to avoid default by Sunchase. At this point, the Pleasants Trust, through Tudor Hall Funding, Inc., became Sunchase's principal secured lender with a first lien on the Property (not including Parcel K). The undercapitalized Sunchase soon defaulted on its obligation to Tudor Hall Funding, Inc. who then initiated foreclosure proceedings against the Property (not including Parcel K) in the Circuit Court for St. Mary's County, MD on August 23, 2007.

On September 10, 2007, the day before the scheduled foreclosure sale, Sunchase filed a voluntary petition under chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, Case No. 07-18677 DWK. On March 13, 2009,

the Bankruptcy Court confirmed a chapter 11 plan jointly proposed by Sunchase and Tudor Hall Funding. The plan provided for the sale and transfer of the Property (not including Parcel K) to Tudor Hall Funding, free and clear of liens, claims, and encumbrances, and in full and complete satisfaction of the secured claim of Tudor Hall funding. Under the confirmed plan, the equity interests of the Class A Members of Sunchase, including Plaintiffs, were eliminated. Class A Members, including Plaintiffs, received nothing on account of their equity interests in Sunchase under the confirmed plan. Parcel K currently remains in the possession of PK-THF.

The Plaintiffs charge, among other things, that a constructive trust was created in Parcel K for the Plaintiffs by Defendants Nyce and Nyce & Co., Inc. They allege that Nyce and Nyce & Co. obtained funds from Plaintiffs by means of fraud, misrepresentation, or other improper conduct, and that such funds were used to purchase Parcel K, which was titled in the name of PK-THF. Plaintiffs contend that under these circumstances, Plaintiffs have a paramount equitable claim to the Parcel K Property.

PK-THF has challenged the constructive trust count of the Complaint. They have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court **DENIES** the Motion.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss under 12(b)(6) is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## III. ANALYSIS

The doctrine of Constructive Trust under Maryland law is an equitable remedy, "to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Jahnigen v. Smith*, 795 A.2d 234, 239 (Md. 2002) (citing *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980)), *cert. denied*, 802 A.2d 439 (Md. 2002). The remedy is available when property is acquired by fraud, misrepresentation, or other improper method, or where the circumstances would render it inequitable for the party holding title to retain it, such as unjust enrichment. *See Wimmer*, 414

A.2d at 1258.  The Court of Appeals in *Wimmer* stated that "[t]he purpose of the remedy is to prevent the unjust enrichment of the holder of the property."  414 A.2d at 1258 (citing *Siemiesz v. Amend*, 206 A.2d 723 (Md. 1965)).

For purposes of this Motion, Defendant PK-THF does not challenge that fraud was perpetrated by Defendants Nyce and Nyce & Co.  Defendant's argument is that PK-THF cannot be considered party to that fraud because: (1) PK-THF did not exist at the time Nyce and Nyce & Co. misled the Plaintiffs; (2) neither PK-THF nor Tudor Hall Farm, the prior owner of Parcel K, participated in any of the activities raising capital from Plaintiffs; and (3) Parcel K was given for the creation of PK-THF without compensation, and therefore Plaintiffs' funds cannot be traced to it. (Doc. No. 61-1, p.7; Doc. No. 65, p. 2).

The Court finds these arguments unpersuasive and holds that Plaintiffs have sufficiently pled the elements of constructive trust under two theories.  First, Parcel K-Tudor Hall Farm was a byproduct of the fraudulent transaction, because it came into existence as part of the property sales agreement that Nyce and Nyce & Co. fraudulently entered into.  Thus, although PK-THF was not in existence at the time of fraud, it was founded through a fraudulent event and received its only relevant asset from a fraudulent transaction.

Secondly, even if PK-THF were able to unlink themselves from the initial fraud, Parcel K is still potentially vulnerable to a constructive trust because the Plaintiffs have stated sufficient facts which, if proven true, constitute unjust enrichment.  PK-THF's existence and its ownership of Parcel K were made possible by Plaintiffs' purchase of Class A Membership Units and the decision of Defendants Nyce and Nyce & Co. to use the Plaintiffs' money to enter an unjust and fraudulent sales agreement.  Therefore, Plaintiffs have conferred a benefit upon PK-THF (*i.e.*,

ownership of Parcel K), and they have stated sufficient facts to show that it would be unjust for PK-THF to retain the benefit.

Finally, the Court is not convinced by Defendants' argument that the conveyance of Parcel K was a gift, and therefore that Plaintiffs cannot trance any of their funds to Parcel K. The sales agreement states that the creation of PK-THF and the conveyance of Parcel K "for no additional payment," (Doc. No. 65-2, Ex.2), which is important evidence substantiating Defendants' position. However, at the motion to dismiss stage, the Court must construe these facts "in the light most favorable to the plaintiff," *Harrison*, 176 F.3d at 783, and when the sales agreement is construed favorably to the Plaintiff, a plausible case could be made that Parcel K was an integral part of the overall sales agreement, and that the consideration offered for Parcel K was the funds contributed by Plaintiffs. For these reasons, Plaintiffs have stated facts sufficient to make out a constructive trust claim, and Defendant's Motion must therefore be denied.

## IV. CONCLUSION

Therefore, for the aforementioned reasons, Defendant Parcel K-Tudor Hall Farm, LLC's Motion to Dismiss is **DENIED**. A separate order will follow.

   November 19, 2010                                                      /s/
            Date                                                        Alexander Williams, Jr.
                                                                                United States District Judge