**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| EUN O. KIM, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:09-CV-01572-AW |
| DOUGLAS A. NYCE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Pending before the Court are Defendant Parcel K-Tudor Hall Farm, LLC ("PK-THF")'s motion for summary judgment, Doc. No. 76, and Plaintiffs' cross motion for summary judgment, Doc. No. 79. The Court has reviewed the entire record with respect to the instant motions. The issues have been fully briefed and no hearing is deemed necessary. *See* D. MD. LOC. R. 105.6 (2010). For the reasons stated more fully below, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the Court's prior Memorandum Opinion with changes as necessary to reflect subsequent developments in the discovery record. This case is brought by several Plaintiffs who invested in a real estate business, Sunchase Capital Partners XI, LLC, ("Sunchase"). Defendant Nyce & Co., Inc., owned by Defendant Douglas A. Nyce ("Nyce"), was the class B Member of Sunchase and had sole authority to appoint, remove, and

replace the manager of Sunchase. Defendant Nyce was at all relevant times the manager of Sunchase with sole authority to make all decisions with respect to its management and operations. Sunchase has not been named as a defendant, however; suit has been brought against Defendant Parcel K-Tudor Hall Farm, LLC, ("PK-THF") a company created in the real estate transaction that underlies the dispute.

Sunchase signed an agreement of sale dated April 6, 2004 agreeing to purchase property ("the Property") from Tudor Hall Farm, Inc.("the Seller") for $15 million. The sale agreement provided Sunchase with title to 141 acres of unimproved real property, save a 7.88 acre area ("Parcel K"), which was to be titled in the name of PK-THF. PK-THF's initial membership consisted of Sunchase, with an 80% stake, and the Seller, with a 20% stake.

In order to raise the $15 million, Sunchase created an offer and sale to investors of securities, described as Class A Membership Units in Sunchase. The proposed investment is described in a Confidential Summary of Offering, dated April 13, 2005. One hundred shares were offered at a cost of $150,000 each, for a total of $15 million. Each investor was supposed to complete an Investor Questionnaire, sign a Subscription Agreement, and sign the Operating Agreement of Sunchase. None of the Plaintiffs in this matter were provided with or asked to complete an Investor Questionnaire. Plaintiffs purchased subscriptions for Class A Membership Units during the period from around May 1, 2005 through July 31, 2005. The Operating Agreement expressly required Defendant Nyce, as Manager of Sunchase, "to act at all times in a fiduciary manner toward the Company and the Members." Doc. No. 1-3, Ex. C.

The Confidential Summary represents that Class A subscription payments would be held in escrow pending acquisition of the Property at closing under the sale agreement. The Confidential Summary defines the "Minimum Offering" as 50 Class A Membership Units, or

$7.5 million. The Subscription Agreement states, "if subscription [sic] for at least 50 Units are not received and accepted by the Company on or prior to April 29, 2005, the offering shall terminate and each Investor's $150,000 per Unit subscription payment shall be returned, without interest." Doc. No. 1-2, Ex. B. The Confidential Summary further represented that Sunchase would not acquire the Property if less than the Maximum Offering ($15 million) was raised and "Sunchase was not able to obtain additional funds, whether from the Class B Member or otherwise." Doc. No. 1-1, Ex. A.

Sunchase closed on the acquisition of the Property on May 2, 2005, even though at that point Nyce had raised only $3,125,000 through the sale of Class A Membership Units. Sunchase, at that point, had been unable to obtain a commitment from any investor or lender to provide the remaining $11,875,000. During a period of around three months after the closing on the acquisition of the Property, Sunchase sold $3,972,000 in Class A Membership subscriptions, bringing the total to $7,097,000: $403,000 short of the Minimum Offering and $7,903,000 short of the Maximum Offering. Sunchase failed to acquire an investor or lender to make up the $7,903,000 difference.

Sunchase then negotiated a modification of its sale agreement with the Seller in order to acquire the property. The modification allowed Sunchase to pay the Seller over time in return for a $500,000 increase in the sale price, bringing the total price to $15.5 million. Using funds from the Class A Membership offering, Sunchase paid $3 million to the Seller at closing on May 2, 2005 and agreed to pay the balance according to the terms of a seven-percent Purchase Money Note which matured on May 2, 2006. Among other things, the Purchase Money Note required Sunchase to make monthly interest payments until maturity and principal payments on the Note as follows: $2 million on July 2, 2005; $5.25 million on November 16, 2005; and $5.25 million

(less $750,000) on May 2, 2006.  The Purchase Money Note was secured by a first deed of trust on the Property.

Sunchase found itself unable to pay on the Purchase Money Note.  Consequently, Nyce solicited a business associate, William D. Pleasants, to make a $5.25 million investment in Sunchase.  In an e-mail to Pleasants, Nyce explained that Sunchase needed the investment to meet the November 16, 2005 payment on the Purchase Money Note.  One week before payment was due, Nyce e-mailed Pleasants again on a more desperate note.  Pleasants, acting through the 2003 Trust of the Descendants of William D. Pleasants, Jr. (the "Pleasants Trust"), agreed to make a $5,315,000 investment (roughly 34% of the $15 million total) in Sunchase in exchange for a 42% ownership interest in Class A.  Defendants Nyce and Nyce and Co., Inc. agreed to preferential investment terms for the Pleasants Trust including additional cash flow distributions, accelerated payment of cash flow distributions, and a pledge of collateral to secure these obligations.

To manage the investment, the Pleasants Trust created Tudor Hall Funding, Inc., which was owned 95% by the Pleasants Trust.  On April 27, 2006, prior to the final maturity date of the Purchase Money Note, Tudor Hall Funding agreed to purchase the Purchase Money Note from Tudor Hall Farm, Inc. to avoid default by Sunchase.  At this point, the Pleasants Trust, through Tudor Hall Funding, Inc., became Sunchase's principal secured lender with a first lien on the Property (not including Parcel K).  The undercapitalized Sunchase soon defaulted on its obligation to Tudor Hall Funding, Inc. who then initiated foreclosure proceedings against the Property (not including Parcel K) in the Circuit Court for St. Mary's County, Maryland, on August 23, 2007.

On September 10, 2007, one day before the scheduled foreclosure sale, Sunchase filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, Case No. 07-18677 DWK. On March 13, 2009, the Bankruptcy Court confirmed a Chapter 11 plan jointly proposed by Sunchase and Tudor Hall Funding. The plan provided for the sale and transfer of the Property (not including Parcel K) to Tudor Hall Funding, free and clear of liens, claims, and encumbrances, and in full and complete satisfaction of the secured claim of Tudor Hall Funding. Under the confirmed plan, the equity interests of the Class A Members of Sunchase, including Plaintiffs, were eliminated. Class A Members, including Plaintiffs, received nothing on account of their equity interests in Sunchase under the confirmed plan. Under the plan, the parties agreed that Sunchase may assign Sunchase's 80% membership interest in PK-THF to Tudor Hall Funding. Tudor Hall Funding separately acquired the remaining 20% interest in PK-THF from Tudor Hall Farm. Thus, Parcel K currently remains in the possession of PK-THF, although Tudor Hall Funding now owns all of the membership interests in PK-THF.[1]

Plaintiffs charge that a constructive trust was created in Parcel K for the Plaintiffs by Defendants Nyce and Nyce & Co., Inc. They allege that Nyce and Nyce & Co. obtained funds from Plaintiffs by means of fraud, misrepresentation, or other improper conduct, and that such funds were used to purchase Parcel K, titled as it was in the name of PK-THF. Plaintiffs contend that under these circumstances, Plaintiffs have a paramount equitable claim to the Parcel K Property.

---

[1] Plaintiffs argue in their reply brief that there is no evidence in the record that Tudor Hall Funding ever acquired ownership and control of Parcel K LLC." *See* Doc. No. 81 at 2. However, Plaintiffs basically admit this issue in their initial motion for summary judgment. *See* Doc. No. 79 at 38 ("the fact that Tudor Hall Funding now owns all of the membership interests in Parcel K LLC…"). Thus, the Court will treat this issue as settled.

On October 1, 2009, the Court entered default judgments against Defendants Douglas A Nyce and Nyce & Co., jointly and severally, in the amount of $3.12 million, for securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. 10b-5 (Count I), violations of §20(a) of the Exchange Act (Count II), common law deceit (Count III), and negligent misrepresentation (Count IV). The only claim remaining is Plaintiffs' constructive trust claim (Count V) against Defendant PK-THF.

The parties have filed cross motions for summary judgment. For the following reasons, the Court **GRANTS** Plaintiffs' motion and denies PK-THF's motion.

## II.   STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On cross-motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III. ANALYSIS

The doctrine of Constructive Trust under Maryland law is an equitable remedy, designed "to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Jahnigen v. Smith*, 795 A.2d 234, 239 (Md. 2002) (citing *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980)), *cert. denied*, 802 A.2d 439 (Md. 2002). The remedy is available only: (1) when property is acquired by fraud, misrepresentation, or other improper method; or (2) where the circumstances would render it inequitable for the party holding title to retain it, such as unjust enrichment. *See Wimmer*, 414 A.2d at 1258. The Court of Appeals in *Wimmer* stated that "[t]he purpose of the remedy is to prevent the unjust enrichment of the holder of the property." 414 A.2d at 1258 (citing *Siemiesz v. Amend*, 206 A.2d 723 (Md. 1965)).

Plaintiffs contend that summary judgment on their constructive trust claim is proper because: (1) Plaintiffs' investment funds were used to purchase Parcel K; (2) Plaintiffs' funds were procured by fraud, deceit, and other improper conduct; and (3) because Plaintiffs' funds supported the creation of PK-THF and its ownership of Parcel K, it would be unjust for PK-THF to retain the benefit. PK-THF argues for summary judgment in its favor on the grounds that: (1) Plaintiffs' investment funds cannot be traced to Parcel K; (2) Plaintiffs' constructive trust claim

is barred by *res judicata* because Plaintiffs failed to assert their interests in Parcel K in the Bankruptcy case; and (3) Plaintiffs' claim is barred under the Bankruptcy Court's Confirmed Sunchase/Funding Plan. The Court will address each issue separately.

      A.     <u>Plaintiffs' Investment Funds were Used to Purchase Parcel K</u>

The first issue the Court must address is whether Plaintiffs' investment funds are traceable to Parcel K. Parties requesting the imposition of a constructive trust must be able to trace their funds to the property upon which the trust is to be impressed. *Bregman, Berbert & Schwartz, L.C.C. v. United States*, 145 F.3d 664, 669 (4th Cir. 1998). Plaintiffs contend that Parcel K was contributed to PK-THF as part and parcel of the overall sales agreement between Sunchase and Tudor Hall Farm, Inc., the Seller. PK-THF asserts that Parcel K was not transferred for payment by Sunchase but rather was contributed by the Seller to PK-THF as a capital contribution.

Both parties contentions are premised on the language in the April 6, 2004 Agreement of Sale. Pursuant to that agreement, Sunchase agreed to pay $15 million (ultimately $15.5 million as set forth in a later amendment to the Agreement of Sale) for title to 141 acres of unimproved real property. As to a remaining 7.88 acre area, Parcel K, the parties agreed that the parcel would be titled in the name of PK-THF, with Sunchase holding an 80% stake and the Seller holding a 20% stake. The recital in the Agreement of Sale states that Sunchase desires to "purchase certain property owned by Seller referred to as Outparcels A, B, C, E, F, G, H, I, J, *and K*…" This is important evidence substantiating Plaintiffs' position that its funds went toward the purchase of Parcel K. However, language contained in Paragraph 16 relating to Parcel K makes the issue less clear-cut. That provision states, in pertinent part:

> Outparcel K. Notwithstanding anything to the contrary contained herein, at the Closing, Seller shall contribute Outparcel K to a newly formed Buyer affiliated limited liability company (the "Outparcel K Owner") *for no additional payment*. Seller will have a capital account in such Outparcel K Owner equal to the fair market value of Outparcel K, be entitled to a 20% membership interest in Outparcel K Owner and the receipt of an accrued return of 8% on such capital account, and shall have reasonable consent rights with respect to such major decisions as the sale, financing/refinancing and the proposed development of Outparcel K.

Doc. No. 46, Ex. 1 at 12 (emphasis added). PK-THF points to the fact that Parcel K was contributed by the Seller for "no additional payment," construing that phrase to mean that Parcel K was not transferred for any payment by Plaintiffs and rather was transferred as a capital contribution by the Seller.

Although the Court notes that in fact, the Seller did receive a 20% membership interest in PK-THF in exchange for its contribution of Parcel K, the Court finds that PK-THF's interpretation fails to comport with the agreement as a whole. The Court finds it far more likely, in light of the language including Parcel K in the recital of properties to be purchased by Sunchase, that by "no additional payment" the parties meant no additional payment over and above the $15.5 million consideration already being paid for all the parcels, including Parcel K. Moreover, PK-THF does not allege that the Seller would have contributed Parcel K to PK-THF for a 20% membership interest if Sunchase had not agreed to pay the $15.5 million purchase price for the entire Tudor Hall Farm property. It is undisputed that Plaintiffs' investment funds were used to pay the $15.5 million purchase price under the Agreement of Sale. Accordingly, the Court finds that Plaintiffs' investment funds were used to purchase Parcel K.

B.      Whether Plaintiffs' Investment Funds were Procured by Fraud, Deceit, and other Improper Conduct

On October 1, 2009, the Court entered default judgments against Defendants Douglas A Nyce and Nyce & Co. ("Nyce"), jointly and severally, in the amount of $3.12 million, for securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. 10b-5 (Count I), violations of §20(a) of the Exchange Act (Count II), common law deceit (Count III), and negligent misrepresentation (Count IV). *See* Doc. No. 35. Plaintiffs argue that *res judicata* precludes PK-THF from re-litigating these fraud claims. PK-THF does not contest that the doctrine of *res judicata* applies to default judgments. *See Sheahy v. Primus Auto. Fin. Serv.*, 284 F. Supp. 2d 278, 281 (D. Md. 2003) ("for *res judicata* purposes a default judgment is given the same effect as a judgment entered after a trial on the merits."). Rather, PK-THF argues that the default admissions of Nyce are not binding as to PK-THF, who still has the right to present its defenses to the complaint. In support of its argument, PK-THF cites to a Maryland Court of Special Appeals case which held that "The default of one defendant, although an admission by it of the allegations in the complaint, does not operate as an admission of such allegations as against a contesting co-defendant even though the defendants may be inextricably joined." *Chromacolour Labs, Inc. v. Snider Bros. Prop. Mgmt., Inc.*, 503 A.2d 1365, 1370 (1986).

While the Court agrees with PK-THF's contention that Nyce's default judgments do not operate as binding admissions on PK-THF, the crucial fact is that they operate as final and conclusive judgments as to Nyce's fraud and deceit. Accordingly, the Court declines to reconsider whether Nyce concealed Sunchase's lack of adequate capitalization and inability to pay the $15.5 million purchase price for the Tudor Hall Farm property. Moreover, the Court

determines that Nyce's affidavit and the other evidence submitted by PK-THF fail to create a genuine dispute of material fact on this issue.

      C.      <u>Because Plaintiffs' Fraudulently Procured Investment Funds Supported the Creation of PK-THF and its Ownership of Parcel K, it would be unjust for PK-THF to retain the benefit</u>

Although the Court acknowledges that PK-THF itself played no role in raising funds from investors, PK-THF came into existence and received Parcel K, its only relevant asset, as part of the property sales agreement Nyce entered into as manager of Sunchase. Accordingly, PK-THF's very existence and its ownership of Parcel K were made possible by Plaintiffs' purchase of Class A Membership Units and Nyce's decision to use those funds to enter into a fraudulent sales agreement. The crucial factor is not whether PK-THF itself engaged in fraudulent or deceitful conduct, but whether Plaintiffs conferred a benefit on PK-THF and whether it would be unjust for PK-THF to retain that benefit. *See Starleper v. Hamilton*, 666 A.2d 867, 869-70 (1995) (Maryland courts may impose a constructive trust even absent wrongdoing by the defendant-trustee). Because it would be unjust for PK-THF to retain the benefit of Parcel K, a benefit derived from a fraudulent transaction which inured to the detriment of Plaintiffs, the Court finds that a constructive trust in favor of Plaintiffs is proper here.

      D.      <u>Plaintiffs' Constructive Trust Claim is not Barred by *res judicata*</u>

PK-THF contends that Plaintiffs' constructive trust claim is barred by *res judicata* because Plaintiffs failed to argue during the bankruptcy case that they, rather than PK-THF, were the true owners of Parcel K. The doctrine of *res judicata* bars successive attempts to relitigate the same cause of action between the same parties, as well as any other claim or issue that could

have been raised in the earlier action. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). The purpose of the doctrine is to prevent a plaintiff from rehashing claims that were or could have been litigated in an earlier proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Res judicata applies when there is: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Pueschel v. United States*, 369 F.3d 345, 345-55 (4th Cir. 2004); *Frank v. Home Depot, U.S.A., Inc*., 481 F. Supp. 2d 439, 442 (D. Md. 2007).

Applying the three prerequisites of *res judicata* to this case, there is no dispute that the first requirement is met. The parties agree that the bankruptcy court's confirmation order constitutes a final judgment on the merits. The parties disagree about the other two requirements: whether PK-THF is in privity with Sunchase, and whether the chapter 11 proceeding involved the same cause of action that Plaintiffs assert here. Because the Court concludes that the chapter 11 proceeding did not involve the same cause of action, it will not reach the issue of whether PK-THF is in privity with Sunchase.

Claims are part of the same cause of action for *res judicata* purposes when they arise out of the same transaction or series of transactions. *Anyanwutaku v. Fleet Mortg. Group, Inc.*, 85 F. Supp. 2d 566,571 (D. Md. 2000). Plaintiffs contend that the facts underlying their present claim were not at issue in the confirmation proceeding. Specifically, Plaintiffs argue that the bankruptcy court did not consider, and had no obligation to consider, any factual dispute relating to Plaintiffs' fraud or constructive trust claims in connection with the bankruptcy court's consideration of the proposed sale of Sunchase's assets. The Court agrees with this contention.

It is undisputed that the facts at the core of Plaintiffs' constructive trust claim were neither raised nor litigated in the chapter 11 proceeding. The bankruptcy court did not purport to

rule on whether Nyce breached any contractual or fiduciary duty to Plaintiffs, and no party introduced any evidence regarding those alleged breaches. There is simply no indication in the record that the facts put at issue by Plaintiffs' present action were raised or litigated before the bankruptcy court. This is important evidence that the chapter 11 case did not involve the same cause of action as the present suit. PK-THF maintains, however, that the facts underlying Plaintiffs' constructive trust claim played an integral part in the chapter 11 proceeding such that the Court should consider the two actions as arising out of the same transaction or series of transactions, even though the relevant facts were never actually raised in the bankruptcy court. Specifically, PK-THF contends that the bankruptcy court necessarily considered the ownership of Parcel K in the process of confirming the Sunchase/Funding plan.[2] The Court finds this argument unpersuasive.

*Res judicata* extends to all matters that were properly before the bankruptcy court or could have properly been brought there. The confirmation process in a chapter 11 case is primarily an inquiry into the viability of the proposed plan and the disposition of the debtor's assets; a bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate. *Rutherford Hosp., Inc. v. RNH Partnership*, 168 F.3d 693, 699 (4th Cir. 1999). Because Parcel K is owned by PK-THF and not Sunchase, it was not considered part of Sunchase's bankruptcy estate for purposes of the bankruptcy proceedings. This much PK-THF acknowledges. The bankruptcy court, in confirming the Sunchase/Funding plan, was not determining the proper ownership of Parcel K, but rather was determining whether the plan as presented met the requirements and objectives of the Bankruptcy Code under 11 U.S.C. § 1129.

---

[2] PK-THF argues that the "confirmed Sunchase/Funding Plan was premised, in part, upon the facts disclosed in the Disclosure Statement that PK-THF owned Parcel K (including the valuation of Sunchase's 80% interest in PK-THF, which would have been lower had the Bankruptcy Court ruled that Plaintiffs were the actual beneficial owners of Parcel K, PK-THF's only asset)." Doc. No. 80 at 21.

The court certainly could have found that the Sunchase/Funding plan met the requirements of section 1129 without delving into facts surrounding Sunchase's misconduct in its capacity as pre-bankruptcy corporate debtor.

Simply put, the issue in a *res judicata* is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." *In re Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993). Looking at the facts that the bankruptcy court was by law required to consider, and the facts that it actually did consider, we simply cannot infer that the facts underlying Plaintiffs' constructive trust claim were sufficiently put at issue by the confirmation process to support *res judicata*.

Even if the Court found that all the prerequisites of *res judicata* had been met, PK-THF would still not be entitled to relief because Plaintiffs' constructive trust claim could not have been brought in the bankruptcy proceeding.[3] PK-THF argues that Plaintiffs could still have asserted their constructive trust theory as an objection to confirmation of the Sunchase/Funding plan. However, merely objecting to the Sunchase/Funding plan would not have been the equivalent of pursuing Plaintiffs' constructive trust claim. Moreover, filing an objection would have at best resulted in denial of the confirmation; Plaintiffs' fraud and constructive trust claims would still have required the filing of a separate adversary proceeding. Given the limited jurisdiction of the bankruptcy court, Plaintiffs' right to object to the Sunchase/Funding plan would not have provided an adequate vehicle to fully assert their constructive trust claim. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295-1301 (11th Cir. 2001). Thus, even if Plaintiffs could have raised a constructive trust theory before the bankruptcy court, the Court finds that

---

[3]As discussed *supra*, a bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate, and Parcel K, being owned by PK-THF rather than Sunchase, was not part of Sunchase's bankruptcy estate. Thus, Parcel K was not property over which the bankruptcy court had jurisdiction.

Plaintiffs had no obligation to do so. Accordingly, Plaintiffs' constructive trust claim is not barred by *res judicata*.

>   D.  Plaintiffs' Claim is not Enjoined under Sunchase's Plan of Reorganization

Lastly, PK-THF argues that summary judgment in its favor is appropriate because Plaintiffs' claims are enjoined under Article 6.4(b) of the confirmed Sunchase/Funding plan. Article 6.4(b) enjoins litigation claims against Tudor Hall Funding, LLC that arise out of its pre- and post-bankruptcy transactions with the debtor and bankruptcy estate. However, Plaintiffs in this action are suing PK-THF rather than Tudor Hall Funding, LLC. Although Tudor Hall Funding, LLC now owns all of the membership interests in PK-THF, a claim against PK-THF is not legally considered an indirect or a direct claim against Tudor Hall Funding, LLC. *See Gebhardt v. Nations Title*, 752, A.2d 1222, 1226 (Md. App. 2000) (finding that an LLC member has no interest in property owned by the LLC and "[t]o hold otherwise would be to disregard the nature and viability of limited liability companies.").

Furthermore, Article 6.4(a), which enjoins the assertion of claims against Sunchase, its bankruptcy estate, assets, and property, does not apply to this action because Parcel K was not an asset of the Sunchase bankruptcy estate, being owned by PK-THF. Thus, the Court finds that Plaintiffs' constructive trust claim is not enjoined under the confirmed Sunchase/Funding plan.

## IV.   CONCLUSION

For the aforementioned reasons, Plaintiffs' motion for summary judgment is GRANTED and PK-THF's motion for summary judgment is DENIED. The Court will permit Plaintiffs to

submit a proposed order respecting the issuance of a constructive trust consistent with this opinion. A separate order will follow.

| September 2, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |