# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| EUN O. KIM, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:09-CV-01572-AW |
| DOUGLAS A. NYCE, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

The matter before the Court is the determination of the dollar amount of Plaintiffs' constructive trust lien on Parcel K. On September 2, 2011, the Court entered an order granting Plaintiffs' cross motion for summary judgment on their constructive trust claim. *See* Doc. No. 83. The Court found that: (1) Plaintiffs' investment funds were used to purchase Parcel K as part of a larger acquisition of the Tudor Hall Farm property; (2) Plaintiffs' funds were procured by fraud, deceit, and improper conduct; and (3) even though PK-THF itself played no active role in the fraud, Plaintiffs' fraudulently procured funds supported the creation of PK-THF and its ownership of Parcel K, and thus it would be unjust for PK-THF to retain the benefit. The Court ordered Plaintiffs to submit a proposed order or judgment with respect to the imposition of a constructive trust on Parcel K. *Id.*

Plaintiffs propose that the Court impose a constructive trust lien of $3.12 million on Parcel K, equal to the entire amount of Plaintiffs' investment in the Tudor Hall Farm property, which included eight parcels total. *See* Doc. No. 84. Although the Court found that Plaintiffs'

1

investment funds were used to purchase Parcel K as part of Plaintiffs' $3.12 million investment in the Tudor Hall Farm property, the Court did not specify what portion of Plaintiffs' investment was used to purchase Parcel K. Thus, the Court invited the parties to submit memoranda setting forth their respective positions on the amount of the constructive trust lien. *See* Doc. No. 86. The resulting memoranda reflect the Parties' extremely divergent positions on this issue as well as a dearth of case law on point. However, both parties cite to *Pike v. Commodore Motel Corp.*, CIV.A. No. 940, 1989 WL 57026, at *6 (Del. Ch. May 25, 1989), a case grappling with a tracing issue involving multiple properties which the Court finds instructive. For the reasons discussed below, the Court declines to attribute Plaintiffs' entire $3.12 million investment to Parcel K, as advocated by Plaintiffs, and instead adopts a proportionality approach resulting in a constructive trust lien of $50,640, as advocated by PK-THF.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the Court's prior Memorandum Opinion with changes as necessary to address the facts relevant to the determination at issue. This case was brought by several Plaintiffs who invested in a real estate business, Sunchase Capital Partners XI, LLC, ("Sunchase"). Defendant Nyce & Co., Inc., owned by Defendant Douglas A. Defefndant Nyce was the class B Member of Sunchase and had sole authority to appoint, remove, and replace the manager of Sunchase. Nyce was at all relevant times the manager of Sunchase with sole authority to make all decisions with respect to its management and operations. Sunchase has not been named as a defendant, however; suit has been brought against Defendant Parcel K-Tudor Hall Farm, LLC, ("PK-THF") a company created in the real estate transaction that underlies the dispute.

A. The Purchase Agreement and Securities Offering

Sunchase signed an agreement of sale dated April 6, 2004 agreeing to purchase property ("the Property") from Tudor Hall Farm, Inc.("the Seller") for $15 million. The sale agreement provided Sunchase with title to 141 acres of unimproved real property, save a 7.88 acre area ("Parcel K"), which was to be titled in the name of PK-THF. PK-THF's initial membership consisted of Sunchase, with an 80% stake, and the Seller, with a 20% stake.

In order to raise the $15 million, Sunchase created an offer and sale to investors of securities, described as Class A Membership Units in Sunchase. The proposed investment is described in a Confidential Summary of Offering, dated April 13, 2005. One hundred shares were offered at a cost of $150,000 each, for a total of $15 million. Each investor was supposed to complete an Investor Questionnaire, sign a Subscription Agreement, and sign the Operating Agreement of Sunchase. None of the Plaintiffs in this matter were provided with or asked to complete an Investor Questionnaire. Plaintiffs purchased subscriptions for Class A Membership Units during the period from around May 1, 2005 through July 31, 2005. The Operating Agreement expressly required Defendant Nyce, as Manager of Sunchase, "to act at all times in a fiduciary manner toward the Company and the Members." Doc. No. 1-3, Ex. C.

The Confidential Summary represents that Class A subscription payments would be held in escrow pending acquisition of the Property at closing under the sale agreement. The Confidential Summary defines the "Minimum Offering" as 50 Class A Membership Units, or $7.5 million. The Subscription Agreement states, "if subscription [sic] for at least 50 Units are not received and accepted by the Company on or prior to April 29, 2005, the offering shall terminate and each Investor's $150,000 per Unit subscription payment shall be returned, without

3

interest." Doc. No. 1-2, Ex. B. The Confidential Summary further represented that Sunchase would not acquire the Property if less than the Maximum Offering ($15 million) was raised and "Sunchase was not able to obtain additional funds, whether from the Class B Member or otherwise." Doc. No. 1-1, Ex. A.

B.     Sunchase's Inability to Pay $15.5 Million Purchase Price

Sunchase closed on the acquisition of the Property on May 2, 2005, even though at that point Nyce had raised only $3,125,000 through the sale of Class A Membership Units. Sunchase, at that point, had been unable to obtain a commitment from any investor or lender to provide the remaining $11,875,000. During a period of around three months after the closing on the acquisition of the Property, Sunchase sold $3,972,000 in Class A Membership subscriptions, bringing the total to $7,097,000: $403,000 short of the Minimum Offering and $7,903,000 short of the Maximum Offering. Sunchase failed to acquire an investor or lender to make up the $7,903,000 difference.

Sunchase then negotiated a modification of its sale agreement with the Seller in order to acquire the property. The modification allowed Sunchase to pay the Seller over time in return for a $500,000 increase in the sale price, bringing the total price to $15.5 million. Using funds from the Class A Membership offering, Sunchase paid $3 million to the Seller at closing on May 2, 2005 and agreed to pay the balance according to the terms of a seven-percent Purchase Money Note which matured on May 2, 2006. Among other things, the Purchase Money Note required Sunchase to make monthly interest payments until maturity and principal payments on the Note as follows: $2 million on July 2, 2005; $5.25 million on November 16, 2005; and $5.25 million

(less $750,000) on May 2, 2006. The Purchase Money Note was secured by a first deed of trust on the Property.

Sunchase found itself unable to pay on the Purchase Money Note. Consequently, Nyce solicited a business associate, William D. Pleasants, to make a $5.25 million investment in Sunchase. In an e-mail to Pleasants, Nyce explained that Sunchase needed the investment to meet the November 16, 2005 payment on the Purchase Money Note. One week before payment was due, Nyce e-mailed Pleasants again on a more desperate note. Pleasants, acting through the 2003 Trust of the Descendants of William D. Pleasants, Jr. (the "Pleasants Trust"), agreed to make a $5,315,000 investment (roughly 34% of the $15 million total) in Sunchase in exchange for a 42% ownership interest in Class A. Defendants Nyce and Nyce and Co., Inc. agreed to preferential investment terms for the Pleasants Trust including additional cash flow distributions, accelerated payment of cash flow distributions, and a pledge of collateral to secure these obligations.

To manage the investment, the Pleasants Trust created Tudor Hall Funding, Inc., which was owned 95% by the Pleasants Trust. On April 27, 2006, prior to the final maturity date of the Purchase Money Note, Tudor Hall Funding agreed to purchase the Purchase Money Note from Tudor Hall Farm, Inc. to avoid default by Sunchase. At this point, the Pleasants Trust, through Tudor Hall Funding, Inc., became Sunchase's principal secured lender with a first lien on the Property (not including Parcel K). The undercapitalized Sunchase soon defaulted on its obligation to Tudor Hall Funding, Inc. who then initiated foreclosure proceedings against the Property (not including Parcel K) in the Circuit Court for St. Mary's County, Maryland, on August 23, 2007.

    C.    <u>Bankruptcy Case</u>

On September 10, 2007, one day before the scheduled foreclosure sale, Sunchase filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, Case No. 07-18677 DWK. On March 13, 2009, the Bankruptcy Court confirmed a Chapter 11 plan jointly proposed by Sunchase and Tudor Hall Funding. The plan provided for the sale and transfer of the Property (not including Parcel K) to Tudor Hall Funding, free and clear of liens, claims, and encumbrances, and in full and complete satisfaction of the secured claim of Tudor Hall Funding. Under the confirmed plan, the equity interests of the Class A Members of Sunchase, including Plaintiffs, were eliminated. Class A Members, including Plaintiffs, received nothing on account of their equity interests in Sunchase under the confirmed plan. Under the plan, the parties agreed that Sunchase may assign Sunchase's 80% membership interest in PK-THF to Tudor Hall Funding. Tudor Hall Funding separately acquired the remaining 20% interest in PK-THF from Tudor Hall Farm. Thus, Parcel K currently remains in the possession of PK-THF, although Tudor Hall Funding now owns all of the membership interests in PK-THF.[1]

D. <u>Procedural Background Relating to the Instant Action</u>

On June 15, 2009, Plaintiffs filed an action in this Court against Defendants Douglas A. Nyce, Nyce & Co., Inc., and PK-THF. *See* Doc. No. 1. On October 1, 2009, the Court entered default judgments against Defendants Douglas A Nyce and Nyce & Co., jointly and severally, in the amount of $3.12 million, for securities fraud in violation of 15 U.S.C. § 78j(b) and 17 C.F.R. 10b-5 (Count I), violations of §20(a) of the Exchange Act (Count II), common law deceit (Count

---

[1] Plaintiffs argued that there is no evidence in the record that Tudor Hall Funding ever acquired ownership and control of Parcel K LLC. *See* Doc. No. 81 at 2. However, Plaintiffs basically admit this issue in their initial motion for summary judgment. *See* Doc. No. 79 at 38 ("the fact that Tudor Hall Funding now owns all of the membership interests in Parcel K LLC…"). Thus, the Court will treat this issue as settled.

III), and negligent misrepresentation (Count IV). This left Plaintiffs' constructive trust claim against Defendant PK-THF.

Plaintiffs contended that a constructive trust was created in Parcel K for the Plaintiffs by Defendants Nyce and Nyce & Co., Inc. They alleged that Nyce and Nyce & Co. obtained funds from Plaintiffs by means of fraud, misrepresentation, or other improper conduct, and that such funds were used to purchase Parcel K, titled in the name of PK-THF. Plaintiffs contended that under these circumstances, they had a paramount equitable claim to Parcel K. On September 2, 2011, the Court granted Plaintiffs' motion for summary judgment on their constructive trust claim against PK-THF. The only remaining issue to be decided is the dollar amount of Plaintiffs' constructive trust lien on Parcel K.

E. Facts Pertinent to the Determination of the Amount of the Constructive Trust Lien

Although the Court found that Plaintiffs' investment funds were used to purchase Parcel K as part of a larger acquisition of the Tudor Hall Farm property, comprised of eight parcels total, the Court did not determine what portion of Plaintiffs' $3.12 million investment was used to purchase Parcel K. The Parties have introduced no direct proof as to what dollar amount of the acquisition went toward Parcel K versus the other seven parcels. What is known and undisputed is that Plaintiffs collectively invested $3.12 million in the Tudor Hall Farm property. The Agreement of Sale lists the total purchase price as $15.5 million. The consideration recited in the May 2, 2005 deed transferring Parcel K to PK-THF was $253,200, *see* Doc. No. 87 Ex. 1, while the other seven parcels were transferred for consideration of $15,246,800, *see* Doc. No. 87 Ex. 3. Plaintiffs' contend that the amount of the constructive trust lien on Parcel K should equal their entire $3.12 million investment. As discussed below, the Court is not convinced by Plaintiffs'

7

argument that the common law tracing rules require such an allocation.

II.     ANALYSIS

The doctrine of Constructive Trust under Maryland law is an equitable remedy, designed "to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Jahnigen v. Smith*, 795 A.2d 234, 239 (Md. 2002) (citing *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980)), *cert. denied*, 802 A.2d 439 (Md. 2002). The remedy is available only: (1) when property is acquired by fraud, misrepresentation, or other improper method; or (2) where the circumstances would render it inequitable for the party holding title to retain it, such as unjust enrichment. *See Wimmer*, 414 A.2d at 1258. Maryland courts may impose a constructive trust even absent wrongdoing by the defendant-trustee; the crucial question is whether the plaintiff conferred a benefit on the defendant-trustee and whether it would be unjust for the defendant-trustee to retain that benefit. *See Starleper v. Hamilton,* 666 A.2d 867, 869-70 (1995).

In granting Plaintiffs' motion for summary judgment on their constructive trust claim, the Court determined that a constructive trust is proper because: (1) Plaintiffs' investment funds were used to purchase Parcel K as part of a larger acquisition of the Tudor Hall Farm property; (2) Plaintiffs' funds were procured by fraud, deceit, and other improper conduct; and (3) even though PK-THF itself played no active role in the fraud, Plaintiffs' fraudulently procured funds supported the creation of PK-THF and its ownership of Parcel K, and thus it would be unjust for PK-THF to retain the benefit.

The Court is now tasked with the more complex and difficult matter of determining the amount of the constructive trust lien, where there is virtually no evidence as to what portion of

Plaintiffs' investment funds, which financed the acquisition of eight parcels total, is attributable to Parcel K.

    A.    <u>Plaintiffs' Commingled Funds Approach</u>

Plaintiffs posit that this issue is governed by common law tracing rules which require an allocation of Plaintiffs' entire $3.12 million investment to Parcel K. Plaintiffs analogize this case to one in which a tortfeasor commingles trust funds in a bank account with the personal funds of the tortfeasor or a third party. Plaintiffs argue that the Tudor Hall Farm property in this case is like a common bank account in which Plaintiffs made a $3.12 million investment. Plaintiffs reason that the sale and transfer of the Tudor Hall Farm property to Tudor Hall Funding pursuant to the Chapter 11 bankruptcy plan is analogous to the dissipation of a commingled account. When a tortfeasor dissipates funds in a commingled account, courts will marshal the remaining balance of the account for the benefit of the constructive trust claimant. Accordingly, Plaintiffs reason, their entire $3.12 million investment used to purchase all eight parcels of the Tudor Hall Farm property should be attributed to Plaintiffs as constructive trust beneficiaries for Parcel K, without allocating of any portion of Plaintiffs' investment to the other parcels sold to Tudor Hall Funding as part of the bankruptcy plan.

In support of their position, Plaintiffs cite to a Maryland case in which the court stated that "[s]o long as a trust fund can be traced, a court will attribute the ownership thereof the *cestui que trust*,[2] and will not allow the right to be defeated, by the wrongful act of the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even those of a third party." *Brown v. Coleman*, 556 A.3d 1091, 1097 (1989). Plaintiffs essentially argue that their right to their $3.12 million investment via constructive trust lien cannot be defeated by the sale

---
[2] i.e the rightful owner or beneficiary of the trust

and transfer of the other parcels to Tudor Hall Funding pursuant to the bankruptcy plan. While the Court finds Plaintiffs' analogy to a commingled account creative, its application is strained given the particular facts of this case. Imposing a constructive trust lien equal to the entire value of Plaintiffs' investment on one parcel owned by a third party, PK-THF, who the Court found played no active role in the fraud, is inconsistent with the principals of equity underlying the constructive trust doctrine. What Plaintiffs seek is not a constructive trust restoring their original right to Parcel K; rather, they seek a means to leverage through Parcel K and PK-THF, a third party, the value of their entire $3.12 million investment in all eight parcels as security for the judgment awarded against the actual tortfeasors. Accordingly, the Court rejects Plaintiffs' commingled funds approach in favor of the more equitable proportionality approach advocated by PK-THF.

B. PK-THF's Proportionality Approach

PK-THF posits that only a portion of Plaintiffs' $3.12 million investment was put toward the purchase of Parcel K, and Plaintiffs' constructive trust lien should not exceed this portion. The difficulty lies in the fact that there is no direct evidence as to what portion of Plaintiffs' investment actually went toward each of the eight parcels. The best evidence before the Court is the consideration of $253,200 referenced in the May 2, 2005 deed transferring Parcel K to PK-THF, versus the consideration of $15,246,800 referenced in the deed transferring the other seven parcels. The entire purchase price of the eight parcels was $15.5 million, but Plaintiffs invested only $3.12 million, or about 20% of the total purchase price. Thus, PK-THF contends that the transaction should be understood as Plaintiffs having paid 20% of the $253,200 purchase price

10

for Parcel K, or $50,640. Accordingly, Plaintiffs' constructive trust lien would be equal to $50,640, the best estimate of the portion of Plaintiffs' investment spent toward Parcel K.

The Court finds the proportionality method to provide a more equitable result for the following reasons. First, the method produces a reasonable result by focusing only on Plaintiffs' investment in the actual parcel that is the subject of Plaintiffs' action against PK-THF. This makes sense given that Plaintiffs are unable to recover a monetary judgment against PK-THF;[3] nor can they secure a constructive trust lien against PK-THF on all eight parcels.[4] Second, as discussed above, the Court finds that granting Plaintiffs a lien on Parcel K equal to Plaintiffs' entire investment "as security for the payment of the $3.12 million judgment" would be inequitable to PK-THF and would conflate the judgments against Nyce and Nyce & Co., Inc. with the granting of a constructive trust on PK-THF's property. The default judgments against Nyce and Nyce & Co., Inc. reflect liability for tortious conduct resulting in a loss of Plaintiffs' entire investment in the Tudor Hall Farm property. While the constructive trust remedy is premised on the same underlying conduct, it is narrower in scope in the instant action because it considers only the benefit unjustly retained by PK-THF's ownership of Parcel K.

The Court granted a constructive trust in favor of Plaintiffs even though it acknowledged that defendant-trustee PK-THF played no role in the securities fraud, because the Court found that Plaintiffs had conferred a benefit on PK-THF and it would be unjust for PK-THF to retain that benefit at Plaintiffs' expense. The benefit conferred upon PK-THF is equal only to Plaintiffs' investment in Parcel K; it does not extend to the entire $3.12 million investment in the Tudor Hall Farm property. The balance of equities in the instant case does not tip so far in

---

[3]The Court has not found PK-THF liable for the conduct of the tortfeasors.
[4]This is because PK-THF only owns one parcel, Parcel K, and the ownership interests of the other seven parcels have already been resolved in the bankruptcy action.

11

Plaintiffs' favor; it merely commands that Plaintiffs recover the value of the benefit conferred upon PK-THF by Plaintiffs' investment in Parcel K.

### III. CONCLUSION

For the aforementioned reasons, the Court finds that Plaintiffs are entitled to a constructive trust lien on Parcel K of $50,640. A separate order will follow.

| | |
|---|---|
| November 2, 2011 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |